Lou Hoffman, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Game Commission, Respondent.

Argued November 15, 1982, before Judges BLATT, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Steven J. Schiffman, Serratelli & Schiffman,* with him *Robert E. Rains, Rains & Jacobson,* for petitioner.

*Stuart M. Bliwas,* Chief Counsel, for respondent.

OPINION BY JUDGE CRAIG, January 11, 1983:

One of our key statutes allowing citizens to see the records created through tax expenditures is the traditionally-named Right-To-Know Law, Act of June 21, 1957, P.L. 390, *as amended,* which in Section 2 simply and clearly states:

> Every public record of an agency, shall at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania.

65 P.S. §66.2.

Petitioner Hoffman wrote to the executive director of the Pennsylvania Game Commission requesting an opportunity to inspect and copy the subscriber mailing list for the *Pennsylvania Game News,* a state magazine expressly authorized by the Game Law, the Act of June 3, 1937, P.L. 1225, *as amended,* §205, 34 P.S. §1311.205, as one of the "bulletins" or items of "literature" which "may be necessary to the work of the commission. . . ." Mr. Hoffman's letter offered reimbursement for reasonable costs incurred in the reproduction of the subscribers' list, asking to discuss the format in which the material might be available.

In a prompt replying letter, the chief counsel of the commission, after expressly stating that the letter had been referred to him for reply, refused the request on

the ground that the publication of the *Pennsylvania Game News* is a "proprietary" function, adding:

> If you disagree with my opinion, you, of course, have the privilege of initiating such litigation as to a final determination of the legal issues involved. However, I should point out to you that in the event it appears that my position is legally incorrect at the first level of litigation, in the ensuing years for which it will take to come to a final decision within the second level of litigation, I expect that the Game Commission will seek relief in the General Assembly.

Mr. Hoffman has appealed under Section 4 of the Right-To-Know Law, 65 P.S. §66.4, which provides that any citizen denied a right granted under that law may appeal to court.

The commission, by its same chief counsel, now has moved to quash the appeal for failure to exhaust administrative remedies, a motion which must be viewed as coming with some inconsistency, if not with ill grace, after the chief counsel's written advice that Mr. Hoffman's alternative was to initiate litigation. The letter clearly referred to litigation in court because it spoke of the "second level of litigation" as the final—obviously the Supreme Court—level and granted the possibility of the commission's view being found to be incorrect at the "first level," obviously this court.[1]

The commission relies upon 58 Pa. Code §145.1-145.3, authorizing administrative hearings before the commission when "any party to a Commission proceeding" is adversely affected by commission action. Concomitantly, the commission attacks the validity of its own refusal, through its chief counsel's letter, by

---

[1] The chief counsel's attempt to discourage the request, by stressing his own ideas of the time required by litigation, deserves neither further comment nor commendation.

citing the Administrative Agency Law, 2 Pa. C. S. §504, providing that no adjudication of a Commonwealth agency shall be valid unless the agency has afforded a hearing pursuant to reasonable notice.

These provisions, however, must bow to the exclusivity of the statutory appeal to court provided by Section 4 of the Right-To-Know Law, the remedy denominated as exclusive by the Pennsylvania Supreme Court in *Wiley v. Woods,* 393 Pa. 341, 350, n. 9, 141 A.2d 844, 849, n. 9 (1958), by the Superior Court in *Barton v. Penco,* 292 Pa. Superior Ct. 202, 204, n. 2, 436 A.2d 1222, 1223, n. 2 (1981), and by this court recently, in *Lewis v. Thornburgh,* 68 Pa. Commonwealth Ct. 157, 448 A.2d 680, 682 (1982). The commission contends that administrative proceedings should be held so that the commission can voice its reasons for refusal and then, again inconsistently, argues that administrative proceedings should be held so that the commission could consider the methods and cost to be associated with providing these records—which it has flatly refused to provide. The commission also argues that the sum total of the cost at which it might arrive—for providing records which it refuses to provide—could be so great that the applicant could be discouraged. These contentions suggest the thought that the General Assembly, in enacting the Right-To-Know Law, may well have mandated the direct remedy of a statutory appeal to court with some recognition of the tactics of delay and discouragement which could be encountered in administrative proceedings at the hands of an agency determined to keep its records under wraps. The motion to quash will be denied.

The questions on the merits, as submitted by petitioner, concern (1) the fundamental entitlement of a citizen to inspect and copy the subscribers' mailing list of the *Pennsylvania Game News,* and (2) if it must be provided, whether the commission must use its fa-

cilities, at the petitioner's cost, to facilitate a transfer of the information.

The commission opposes all access to the information on the ground that distribution of the magazine is a proprietary function, not governmental, and that, accordingly, the list is a trade secret. The commission offers no authority for this remarkable proposition, which cannot stand in the face of the words of the Game Law quoted above, which authorize the printing and distribution of bulletins and literature "necessary to the work of the commission," expressly including "the magazine known as Pennsylvania Game News." There is no authority or analogy to cause us to regard the magazine as other than a useful governmental means of conveying information concerning game conservation and educating the public concerning the responsibilities shared under law by the public and government in that respect.

Although the trade secret contention ceases to be of any moment when the function is recognized as governmental, rather than that of a private business, the heart of the commission's resistance seems to be that the applicant has sought to obtain the subscribers' list for commercial purposes, perhaps for the distribution of products or even literature in competition with the commission's magazine. However, as we stated in *Marvel v. Dalrymple,* 38 Pa. Commonwealth Ct. 67, 72, 393 A.2d 494, 497 (1978), the right of any citizen to examine a public record is not dependent upon any other personal or property right, privilege or immunity he may otherwise enjoy, but the question is whether the documents are within the framework of public records as a "contract dealing with the receipt or disbursement of funds by an agency or its . . . use or disposal of services or of . . . property. . . ." As underscored by Judge MENCER's dissenting opinion in *Mergenthaler v. Pennsylvania State Employees Re-*

*tirement Board,* 33 Pa. Commonwealth Ct. 237, 372 A.2d 944 (1977), we have examined and definitively decided that lists of names do come within the public record concepts of an account or contract dealing with the receipt or disbursement of funds or the disposal of services or property. In *Mergenthaler* we decided that a list of retired state employees was a public record. In *Young v. Armstrong School District,* 21 Pa. Commonwealth Ct. 203, 344 A.2d 738 (1975) we held that a list of kindergarten pupils was a public record, and in *Friedman v. Fumo,* 9 Pa. Commonwealth Ct. 609, 309 A.2d 75 (1973) we concluded that the names of candidates for examination as certified public accountant were also records in the public domain. Here, of course, the subscription list is an account identifying the contracts between the commission and its subscribers with respect to the distribution of the magazine, whether that distribution be regarded as one of services or of property or both.

When we turn to the question of the mode by which the agency must give access to a public record, the law, in Section 3, 65 P.S. §66.3, makes it clear that any citizen has the right to make copies, including photographic ones, while the records remain in the custody of the agency, authorizing the agency's custodian to apply reasonable rules governing the making of copies. Of course, the applicant has no right to demand that the agency develop for his convenience copies of "addressograph labels" as tentatively sought. Counsel has suggested that the list, is in fact, computerized. If that be the case, the essence of the record would be electronic, readable only by machines in that form, but with hard copy undoubtedly printed out at some juncture.

In sustaining this appeal, we will leave the determination of method precisely where the statute puts it, in the hands of the agency, which knows best how

the information can be afforded, whether to be reproduced by means brought to it by the applicant or by means at hand in the agency at the applicant's cost. We expect that the agency will provide for the implementation of our order in an efficient manner, fair and suitable for all concerned.

ORDER

Now, Jauary 11, 1983, the appeal is sustained and the Pennsylvania Game Commission is directed promptly and efficiently to afford the petitioner the right to take extracts or make copies, including photographic copies, of the list of names and addresses of subscribers to the *Pennsylvania Game News* in accordance with provisions of Section 3 of the Act of June 21, 1957, P.L. 390, *as amended.*