125 Pa. Commonwealth Ct. 143 (1989)
557 A.2d 1123
Consumer Education and Protective Assoc. (CEPA) et al.
v.
Southeastern Pennsylvania Transportation Authority (SEPTA). Consumer Education and Protective Association (CEPA), Appellant.
No. 281 C.D. 1988.
Commonwealth Court of Pennsylvania.
Argued December 14, 1988.
April 14, 1989.
*144 Argued December 14, 1988, before President Judge CRUMLISH, JR., and Judges CRAIG, BARRY, COLINS, PALLADINO, McGINLEY and SMITH.
Irv Ackelsberg, Community Legal Services, Inc., for appellant.
David P. Bruton, with him, David L. Hall, Drinker, Biddle & Reath, for appellee.
OPINION BY JUDGE COLINS, April 14, 1989:
The Consumer Education and Protective Association (CEPA)[1] appeals from an order of the Philadelphia *145 County Court of Common Pleas (trial court) which affirmed the Southeastern Pennsylvania Transportation Authority's (SEPTA) fare increases effective in July, 1986, and denied CEPA's request for access to certain documents and information in SEPTA's control.
The Pennsylvania Urban Mass Transportation Law (Act 101)[2] sets forth SEPTA's legal powers and responsibilities. Among those powers, Section 303(d)(9)[3] of Act 101 permits SEPTA "[t]o fix, alter, charge and collect fares, rates, rentals and other charges for its facilities . . . at reasonable rates to be determined exclusively by it, . . . ." Accordingly, pursuant to this power, on June 25, 1986, SEPTA's Board of Directors unanimously adopted a budget for fiscal year 1987, which included an estimated twenty-five percent (25%) fare increase to become effective July 6, 1986.
Prior to the implementation of the fare increase, public hearings were held in accordance with Section 334(b)[4] of Act 101 to consider SEPTA's proposed operating budget and tariffs increasing passenger fares on all SEPTA divisions. The hearings were scheduled and subsequently held in each of the five counties of Southeastern Pennsylvania between April 21, 1986, and May 1, 1986. Copies of the budget proposal and tariffs were made available for public inspection at the Office of the Secretary of the Board of SEPTA, as well as at a number of specifically identified public libraries throughout the five counties.
Prior to the Philadelphia hearing, CEPA's counsel requested an opportunity to inspect and copy various documents in SEPTA's possession for the purpose of *146 preparing for the hearings. CEPA's requests included, inter alia:
(1) All documents referred to by witnesses in the course of his/her testimony, or which were relied on in the preparation of the testimony.
(2) All written testimony and all internal memoranda concerning the testimony prepared by or for the witnesses scheduled to testify.
(3) All work sheets, reports, studies, memoranda, and other documents containing the actual data and calculations used by SEPTA in making the expense projections listed in the operating budget proposal.
(4) SEPTA's liability policies.
(5) Claims data from which 1986 and 1987 pay out estimates were derived, including the stage of individual litigation and method used to arrive at estimated liability in individual cases.
(6) All internal memoranda setting forth or establishing policy or practice for the settlement and/or litigation of claims against SEPTA.
(7) All reports and memoranda prepared since 1983 which (a) evaluated the performance of the claims/legal department, (b) compared SEPTA's annual claims liability to that of other transit systems, or (c) analyzed in any way the reasons for the increase in SEPTA's liability costs.
(8) Studies, reports or memoranda concerning the social, economic, or environmental impact of the proposed fare increases.
(9) Studies, reports or memoranda which evaluate alternative courses of action if the fares are not increased as proposed.

*147 (10) Studies, reports or memoranda which project ridership levels as they relate to proposed fare increases.
(11) Reports or memoranda which described all efforts of SEPTA since 1983 to obtain more subsidies from the federal, state or county governments.
(12) Studies, reports or memoranda which compare the level of state subsidies for SEPTA with the financial support enjoyed by transit systems in Pittsburgh and other states and which analyze the reasons for discrepancies.
(13) The actuarial report identified by SEPTA witnesses as the basis for the liability claims pay out projection.
(14) The monthly management reports which form the basis for the management summary to the board.
(15) Copies of recent audits of SEPTA.
(16) SEPTA's staff analysis showing how much money it could receive from PennDOT subsidies in fiscal year 1987 under the current funding formula and the sum anticipated that PennDOT will actually pay.
Despite the foregoing requests, CEPA was permitted to inspect only the operating budget proposal and those exhibits which SEPTA planned to introduce into the hearing record.
The Philadelphia hearing was held on April 26, 1986. At the onset of this hearing, CEPA renewed its request to inspect the documents which SEPTA had previously refused to provide for inspection. The hearing examiner refused to order such discovery claiming that he lacked authority to compel SEPTA to produce documents for the *148 hearing. Instead, the hearing examiner suggested that CEPA present its request before the SEPTA board. However, the hearing examiner did permit CEPA's attorneys to examine SEPTA's witnesses.
Following the close of all the hearings, CEPA sent a letter dated May 2, 1986, to the Chairman of the SEPTA board requesting that he produce the documents requested for CEPA's inspection. The Chairman responded to CEPA's letter informing CEPA that all pertinent information concerning SEPTA's proposed fiscal year 1987 budget and fares which was not confidential had been made a matter of public record.
CEPA subsequently submitted proposed findings and recommendations to the hearing examiner in which it renewed its demand for full disclosure of the requested information and argued that SEPTA's failure to disclose the same constituted an error of law.
By letter dated May 21, 1986, the hearing examiner submitted to the SEPTA board a report and recommendation in which he recommended adoption of the budget proposal and fare increases. The SEPTA board met on June 25, 1986, to consider the budget and fares. Once again, CEPA appeared and again sought the requested documents and information from SEPTA, and such request was once again denied. Thereafter, the SEPTA board passed a resolution which approved the proposed budget and increased fares.
CEPA filed an appeal to the trial court arguing that it was wrongfully denied access to factual material in SEPTA's possession which was needed to participate actively and meaningfully in the public hearings. In addition, CEPA filed an application for supersedeas forbidding implementation of the new fare schedule. The application for supersedeas was denied by the trial court on July 3, 1986. On December 30, 1987, the trial court also *149 rejected CEPA's arguments on the merits of its appeal. The trial court concluded that CEPA's requests came within the exceptions to the right to know provisions contained in Section 319(c) of Act 101[5] and concluded that the requested materials constituted confidential information gathered by SEPTA for the defense of litigation or was otherwise too voluminous and burdensome to be produced. From that decision CEPA appeals.
CEPA contends that SEPTA violated Section 319(c) of Act 101 by refusing to allow CEPA access to the requested documents. In addition, CEPA contends that SEPTA's refusal to permit access to the underlying documents of the operating budget proposal violated Section 304(a)[6] of Act 101 by denying the public an opportunity to ask and have answered reasonable and legitimate questions.
CEPA appeals pursuant to Section 303(d)(9) of Act 101 which provides that:
Any person aggrieved by any rate or service or change of service fixed by the authority may bring an appeal against the authority for the purpose of protesting against any such charge, service, or change or service: Provided, however, That the grounds for such suits shall be restricted to a manifest and flagrant abuse of discretion or an error of law; otherwise, all such actions by the authority shall be final.
55 P.S. §600.303(d)(9). Accordingly, pursuant to Section 303(d)(9), we are limited in our review of this action to a determination of whether SEPTA's failure to provide CEPA access to the requested documents constituted a manifest and flagrant abuse of discretion or an error of law.
*150 CEPA maintains that it is entitled to access of the documents underlying the operating budget proposal pursuant to Section 319(c) of Act 101 which provides:
All resolutions and all proceedings of the authority and all documents and records in its possession shall be public records and open to public inspection, except such documents and records as shall be kept or prepared by the board for use in negotiations, actions or proceedings to which the authority is or may become a party.
55 P.S. §600.319(c).
SEPTA, on the other hand, argues that the trial court correctly determined that all of the documents and information to which CEPA was denied access fall within the express exemption to inspection contained in Section 319(c).
CEPA directs our attention to this Court's decision in City of Pittsburgh v. Milk Marketing Board, 60 Pa. Commonwealth Ct. 422, 433 A.2d 561 (1981). It is submitted by CEPA that Milk Marketing stands for the proposition that where a statute expressly provides for cross-examination at administrative hearings, the questioner must have access to the data relied on by the witness.
In Milk Marketing, the City of Pittsburgh (City) sought access to underlying information which formed the basis of an expert witness' testimony that the adoption of $.05 per gallon increase in milk prices was necessary since independent milk dealers were not realizing a fair return on sales. The Milk Marketing Board denied the City's request and stated that the desired information fell within Section 310 of the Milk Marketing Law,[7] which excludes from public access information obtained by the Board while discharging its statutory duties. However, on *151 appeal, this Court held that the information sought by the City came within the provisions of Section 310 which specifically subjected to full cross-examination any statements or testimony offered by parties other than Board employees or agents. Accordingly, this Court concluded that the Board erred in not permitting the City to examine the requested information.
In the present matter, SEPTA attempts to distinguish Milk Marketing by asserting that the Milk Marketing Law expressly permits cross-examination, while Act 101 contains no similar provision. The only requirement of this nature imposed by Act 101, SEPTA argues, is contained in Section 304(a)(4)[8] which requires that members of the public receive answers to reasonable and legitimate questions.
Notwithstanding this distinction, however, we believe that it would be quite difficult for the public to put forth intelligent and probative questions to SEPTA without examining the underlying calculations and premises upon which SEPTA based the proposed 1987 budget. In fact, the Court in City of Philadelphia v. Southeastern Pennsylvania Transportation Authority, 1 Pa. Commonwealth Ct. 101, 114, 271 A.2d 504, 511 (1970), aff'd 441 Pa. 518, 272 A.2d 921 (1971), noted, "[t]he obvious purposes of a public hearing are to provide . . . an opportunity to cross-examine SEPTA officials who testify, . . .." The budget proposal in the instant matter anticipated a $57 million dollar increase in operating expenses unless the proposed fare hikes were implemented. Accordingly, we believe that SEPTA riders, individuals who sustain the impact and bear the burden of the fare increases, must be permitted to examine and question the documents underlying the budget proposal.[9]
*152 Of course, not all of the requested documents and information are accessible by CEPA, since some of this information falls outside of the public records provision of Act 101, 55 P.S. §600.319(c). Because our research has revealed no case law directly on point with respect to the questions raised in this appeal, we will look to what is commonly referred to as the Right to Know Act (Act),[10] for direction in deciding this matter.[11] Section 2 of the Act[12] permits the citizens of the Commonwealth to examine and inspect the public records of an agency at reasonable times.
Section 1(2) of the Act, 65 P.S. §66.1(2), defines public record as:
Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons . . . `public records' shall not mean any report, communication or other paper, *153 the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, . . . .
This Court has found on several occasions that lists of names, or documents from which lists can be compiled, are public records which are available for inspection. Hoffman v. Pennsylvania Game Commission, 71 Pa. Commonwealth Ct. 99, 455 A.2d 731 (1983); Mergenthaler v. State Employes' Retirement Board, 33 Pa. Commonwealth Ct. 237, 372 A.2d 944 (1977), confirmed, 33 Pa. Commonwealth Ct. 249, 381 A.2d 1032 (1978). Moreover, if a list is not in existence, the requesting party is, nevertheless, entitled to the records or information from which it may compile a list of the information sought. Vartan v. Department of General Services, 121 Pa. Commonwealth Ct. 470, 550 A.2d 1375 (1988). Documents also constitute public records if they form the basis for an agency decision. Young v. Armstrong School District, 21 Pa. Commonwealth Ct. 203, 344 A.2d 738 (1975). Likewise, if a report or document constitutes an essential component of an agency decision, it falls within the Act's definition of an agency decision and is, therefore, a public record. Patients of Philadelphia State Hospital v. Department of Public Welfare, 53 Pa. Commonwealth Ct. 126, 417 A.2d 805 (1980).
Correspondence and memoranda are not lists, compilations of facts, or statistical data. Thus, this Court recently held if it is not shown that such correspondence or memoranda form the basis for an agency decision or if it is not clear that the information sought was an essential component of that decision, the requester is not entitled to that information. Vartan.
Based on the foregoing, we hold that the work sheets and reports and all other documents previously listed in *154 request No. 3 (see page 146 of this opinion), which formed the basis of, or were essential components in the creation of SEPTA's budget proposal constitute public records which CEPA would be entitled to inspect. However, CEPA would not be entitled to inspect internal memoranda or reports unless CEPA can demonstrate that such information was integral in formulating SEPTA's budget proposal. Therefore, CEPA's request made in No. 2 is denied insofar as it relates to "all internal memoranda concerning the testimony prepared by or for the witnesses scheduled to testify." Furthermore, CEPA shall be denied access to all confidential information which was prepared for use in litigation or negotiations to which SEPTA is or may become a party, including requests Nos. 5, 6, and 7, specifically.
Accordingly, CEPA would be entitled to inspection of the documents and information listed in paragraphs 1, 2, 3, 4, 8, 9, 10, 11, 12, 13, 14, 15, and 16 subject to the previously discussed restrictions. However, the issue of the 1987 fiscal budget is moot. Courts, nevertheless, will review such matters when they are capable of repetition unless settled. Colonial Gardens Nursing Home v. Bachman, 473 Pa. 56, 373 A.2d 748 (1977). Therefore, applying the above standards, we hold that in all future proceedings held pursuant to Act 101, inspection by proper litigants shall be allowed in a fashion consistent with the foregoing opinion.

ORDER
AND NOW, this 14th day of April, 1989, the order of the Philadelphia County Court of Common Pleas in the above-captioned matter is affirmed in part and reversed in part consistent with the foregoing opinion.
NOTES
[1] CEPA filed this action on behalf of lower income consumers aggrieved by the fare increases.
[2] Act of January 22, 1968, P.L. 42, as amended, added by Section 3 of the Act of July 10, 1980, P.L. 427, as amended, 55 P.S. §§600.101-600.407.
[3] 55 P.S. §600.303(d)(9).
[4] 55 P.S. §600.334(b).
[5] 55 P.S. §600.319(c).
[6] 55 P.S. §600.304(a).
[7] Act of July 31, 1968, P.L. 963, as amended, 31 P.S. §700j-310.
[8] 55 P.S. §600.304(a)(4).
[9] We note that SEPTA recently adopted a new fare increase of approximately nineteen percent (19%). SEPTA riders cannot be asked to sit idly by, while for many, their sole or primary means of transportation is becoming unaffordable. Access to the information which ultimately resulted in the proposed operating budget should be available so that concerned SEPTA riders may meaningfully question and challenge where and how their fare money is being spent.
[10] Act of June 21, 1957, P.L. 390, as amended, 65 P.S. §§66.166.4
[11] SEPTA is subject to the provisions of the Act pursuant to Section 1 of the Act, 65 P.S. §66.1, which includes in its definition of agency, "any State or municipal authority or similar organization created by or pursuant to a statute which declares in substance that such organization performs or has for its purpose the performance of an essential government function."
[12] 65 P.S. §66.2.