**SIERRA CLUB, the Commission on Economic Opportunity of Luzerne County, and Eric Joseph Epstein, Petitioners,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 20, 1996.

Decided Nov. 12, 1997.

Alan J. Barak, Harrisburg, for petitioners.

Lee Morrison, Asst. Counsel, Harrisburg, for respondent.

Anthony J. Foschi, Harrisburg, for intervenor, Commonwealth Reporting Co.

Before COLINS, President Judge, and McGINLEY, SMITH, PELLEGRINI, KELLEY, FLAHERTY and LEADBETTER, JJ.

LEADBETTER, Judge.

Petitioners Sierra Club, the Commission on Economic Opportunity of Luzerne County and Eric Joseph Epstein were intervenors in a base rate proceeding for Pennsylvania Power & Light Company (PP & L) before the Pennsylvania Public Utility Commission (PUC). They have petitioned for review of the PUC's denial of their request to be provided copies of transcripts of testimony in the rate case at the actual cost of reproduction rather than the rate charged by a court reporting firm with which the PUC has contracted to record and transcribe such testimony. In the alternative, they requested permission to remove transcripts from PUC offices and have them copied commercially. The PUC filed a motion to quash the petition for review, which the court directed to be argued with the merits.

Petitioners question whether PUC hearing transcripts are "public records" under the statute commonly known as the "Right-to-Know Act," Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §§ 66.1—66.4 (Act); whether, in view of PUC requirements that parties cite to the transcript when briefing their cases, the Act requires (a) that the PUC provide citizen-requested copies at a cost based on actual reproduction costs or permission for the citizen to copy; (b) that the PUC may not delegate to a private con-tractor the setting of terms and conditions of receipt, including barring a purchaser from making further copies; and (c) that the PUC provide copies soon enough for a citizen litigant to use them in the proceeding; and whether the PUC's motion to quash should be dismissed. The PUC counterstates the question on the merits as whether the PUC's regulation providing that transcript copies be obtained through a court reporter for parties in a base rate case is a "reasonable rule" governing the making of copies under the Act.

Testimony in the PP & L rate case generated a transcript in excess of 2,400 pages. Commission regulations provide that the transcript prepared by the Commission's official reporter shall be part of the record and shall be the sole official transcript, 52 Pa. Code § 5.251(a); that parties relying upon evidence in briefs must make reference to pages of the record or exhibits where the evidence appears, 52 Pa.Code § 5.501; and that a person desiring a copy of the transcript "may obtain copies from the official reporter upon payment of the fees fixed therefore [sic]." 52 Pa.Code § 5.254(a).

The PUC contracts with private court reporting firms rather than performing reporting functions itself. Petitioners requested copies of the transcripts and exhibits from the PUC at a cost not to exceed the cost of reproduction, asserting that it had attempted unsuccessfully to negotiate with the court reporting firm to purchase copies at less than the rate per page demanded by the court reporter.[1] By letter of June 22, 1995, the Commission's Secretary denied the request, quoting 52 Pa.Code § 5.254 and noting also that the Commission's contract with the court reporting firms provides that the Commission will not supply copies to any litigant in a proceeding. Petitioners then filed their petition for review pursuant to § 4 of the Act, 65 P.S. § 66.4.[2] On February 6, 1996, oral arguments were presented to a three judge panel of this court. In an opinion by

---

1. The PUC asserts in its brief that various factors affect the cost of a transcript and that the charge of $2.45 per page in the PP & L case was based in part on the one-week turnaround time requested.

2. Section 4 also provides the scope of review, which is whether "such denial was not for just and proper cause under the terms of this act ..." 65 P.S. § 66.4.

Judge Smith, which was filed on July 22, 1996, the panel, with Judge Rodgers dissenting, held that the transcripts were "public records" within the meaning of § 1 of the Act, 65 P.S. § 66.1(2) and that 52 Pa.Code § 5.254(a) was invalid under § 3 of the Act, 65 P.S. § 66.3. The PUC subsequently filed an application for reargument, which was granted, and on November 29, 1996, an en banc panel of this court heard oral arguments.

### I.

■ The court first addresses the PUC's motion to quash the petition for review, filed pursuant to Pa. R.A.P.1972(7), which asserts that petitioners are not aggrieved and hence lack standing to pursue this appeal. The PUC maintains that petitioners had access to view the transcripts in the PUC file room during normal business hours, that they were entitled to purchase transcripts from the court reporter and that in this particular case the Administrative Law Judge made his personal copy available. The PUC also asserts that the petition for review is moot because the PP & L rate case has been concluded before the PUC and is on appeal, and petitioners therefore have no litigation need for the transcripts.

The motions provided for by Pa. R.A.P. 1972 all involve disposition of a case by an appellate court without reaching the merits. They include motions to transfer, to dismiss for want of jurisdiction, to dismiss for mootness and to dismiss for failure to preserve an issue or for other waiver of the right to appeal, as well as "(7) [t]o quash for any other reason appearing on the record." Pa. R.A.P.1972(7). In the case sub judice, petitioners requested copies of hearing transcripts at reproduction cost or temporary custody of transcripts for the purpose of making their own reproductions. The PUC denied petitioners' specific request; hence, petitioners were "aggrieved" by that denial. Whether petitioners are in fact entitled to have their request granted, or whether the PUC's current practices satisfy the statutory

requirements, is the precise issue to be decided upon the merits of this appeal. Consequently, the PUC's motion to quash for lack of standing will be denied.

■ A motion to dismiss for mootness is provided for by Pa. R.A.P.1972(4). This court will dismiss an appeal as moot unless an actual case or controversy exists at all stages of the judicial or administrative process. *Cytemp Specialty Steel Div., Cyclops Corp. v. Pennsylvania Public Utility Comm'n*, 128 Pa.Cmwlth. 349, 563 A.2d 593, 596 (1989). Exceptions to this principle are made where the conduct complained of is capable of repetition yet likely to evade review, where the case involves issues important to the public interest or where a party will suffer some detriment without the court's decision. *Id.*

■ The present case is technically moot because the petitioners have not intervened in the appeal from the PUC's decision in the underlying rate case and thus no longer have use for a transcript. Nevertheless, the court regards the issue presented here as one likely to be repeated yet evade review, and also as one involving an important public interest. Therefore, we deny the PUC's motion to quash. However, since the PUC stated a colorable argument that the present case is moot, we also deny petitioners' request for an award of attorney's fees relating to the motion.

### II.

■ We now turn to the merits of this appeal.[3] Section 1(2) of the Act, in relevant part, defines "public record" as:

[A]ny minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term "public records" ... shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited,

---

**3.** Our scope of review under the Act is limited to determining whether the agency's denial of the petitioner's request was for just and proper

cause. *Pennsylvania Coal Ass'n v. Environmental Hearing Bd.*, 654 A.2d 122, 123 (Pa.Cmwlth. 1995).

restricted or forbidden by statute law or order or decree of court.

. . .

65 P.S. § 66.1(2). Petitioners note that the courts have held many different kinds of documents to be public records.

In *Consumer Educ. and Protective Ass'n v. Southeastern Pennsylvania Transportation Authority*, 125 Pa.Cmwlth. 143, 557 A.2d 1123 (1989), this court noted previous holdings that documents constitute public records if they form the basis for an agency decision or if they constitute an essential component of an agency decision. *Id.* 557 A.2d at 1127. The court approved as within the definition of public records, among other types of documents requested, documents referred to by witnesses in the course of testimony that were relied upon in the preparation of testimony and written testimony. *Id.* at 1126.

██ Nonetheless, the PUC argues that hearing transcripts should be deemed to be outside the definition of "public records" in the Act because they are specifically addressed in numerous regulations.[4] This court disagrees that hearing transcripts are or should be excluded from the sweeping definition of "public records" provided by § 1(2) of the Act and by numerous judicial interpretations. In particular, this court has held that the definition of "minute, order or decision" of an agency includes documents that are essential to the agency's decision, which in turn means that the decision must have been contingent upon the information contained in the document and could not have been made without it. *Nittany Printing & Publishing Co., Inc. v. Centre County Bd. of Comm'rs*, 156 Pa.Cmwlth. 404, 627 A.2d 301, 303–04 (1993). Indeed, at oral argument, counsel for the PUC conceded that the transcripts of the "direct" testimony of witnesses, which are pre-prepared and submitted prior to the hearing are consid-

ered public records. The PUC's argument that the cross examination of those witnesses (which occurs at the hearing and is stenographically transcribed) is not similarly a public record cannot withstand logical scrutiny. Although prepared in a different manner, the evidence is of equal weight and is used by the PUC for the same purpose in reaching its decision. Thus, we conclude that the transcripts sought here are public records within the meaning of § 1(2) of the Act. The transcript of testimony and evidence, upon which the PUC's decision is based, unquestionably falls within this definition.[5]

### III.

██ The next question is whether the PUC's current arrangements for persons to obtain copies of transcripts complies with the mandates of § 3 of the Act, relating to extracts, copies, photographs or photostats. Section 3 provides:

> Any citizen of the Commonwealth of Pennsylvania shall have the right to take extracts or make copies of public records and to make photographs or photostats of the same while such records are in the possession, custody and control of the lawful custodian thereof or his authorized deputy. The lawful custodian of such records shall have the right to adopt and enforce reasonable rules governing the making of such extracts, copies, photographs or photostats.

65 P.S. § 66.3. Petitioners note that in *Hoffman v. Pennsylvania Game Comm'n*, 71 Pa. Cmwlth. 99, 455 A.2d 731 (1983), once the court determined that the list of names of subscribers to a magazine published by the Game Commission constituted a public record, the court left to the discretion of the agency the manner in which the information was to be afforded, "whether to be repro-

---

4. See p. 1137, *infra.*

5. The exception in § 1(2) for materials that are forbidden or restricted from publication expressly requires "statute law" to establish such an exception. Although agency regulations duly adopted pursuant to a statutory grant of authority have the force and effect of law, *Teledyne Columbia–Summerill Carnegie v. Unemployment*

*Compensation Bd. of Review*, 160 Pa.Cmwlth. 17, 634 A.2d 665, 668 (1993), they are not statutes.

The courts have held repeatedly that the citizen's interest or purpose in seeking a public record is irrelevant. *Wiley v. Woods*, 393 Pa. 341, 350, 141 A.2d 844, 849 (1958); *Envirotest Partners v. Department of Transportation*, 664 A.2d 208, 212 (Pa.Cmwlth.1995).

duced by means brought to it by the applicant or by means at hand in the agency at the applicant's cost." *Id.* 455 A.2d at 734. The court added: "We expect that the agency will provide for the implementation of our order in an efficient manner, fair and suitable for all concerned." *Id.*

Here, the PUC has adopted a regulation in the exercise of this discretion:

(a) A party or other person desiring copies of the transcript may obtain copies from the official reporter upon payment of the fees fixed therefore.

52 Pa.Code § 5.254(a).

Moreover, this regulation mirrors 1 Pa. Code § 35.133(a), relating to copies of transcripts, in the General Rules of Administrative Practice and Procedure, which provides:

The agency will cause to be made a stenographic record of all public hearings and the copies of the transcript thereof as it requires for its own purposes. Participants desiring copies of the transcript may obtain copies from the official reporter upon payment of the fees fixed therefor.

The PUC also notes that various *other* administrative agencies require by regulation that transcripts be purchased from the official court reporter, e.g., the State Civil Service Commission in 4 Pa.Code § 110.4(a), which provides: "Parties shall make arrangements to purchase copies of the transcript directly with the reporting service." Further, Chapter 50 of the Pennsylvania Rules of Judicial Administration, 201 Pa.Code Rules 5000.1—5000.13, relating to uniform rules governing court reporting and transcripts in the unified judicial system, provides that a court reporter is under no obligation to file or certify a transcript in the absence of full payment or provision of adequate security.

Thus, the PUC argues that the commonality of these regulations supports its contention that its regulation and its agreements with court reporting firms under it constitute "reasonable rules governing the making of ... copies" as authorized by § 3 of the Act. The policy behind its regulation and its contracts, the PUC points out, is that base rate cases are voluminous (cross-examination transcripts in one case allegedly exceeded

20,000 pages, and the case involved nearly 800 parties of record) and the court reporting firms have resources to meet turnaround and copying requirements that the PUC lacks. The PUC contends that a comparison to cost of reproduction is inappropriate because the court reporter is being compensated for professional services, i.e., stenographic recording of the testimony and preparation of the original transcript, as well as for the cost of reproduction. The PUC notes that its current system does not preclude anyone from examining the records free of cost but simply provides an equitable means of distributing all of these costs among the litigants. It argues that petitioners' demand here is contrary to the general principle that parties pay their own costs to advance their private interests through litigation and that the public should not be required to underwrite such expenses.

We agree that under all the above-described circumstances the PUC's reproduction policy is reasonable. In this regard, it must be noted that petitioners make no claim that they are unable to pay the court reporters' charges, only that they—and other litigants—should not have to. We do not here decide the reasonableness of the PUC's regulation with respect to a litigant who makes a showing of need for the transcript and financial inability to pay, such as would qualify for *in forma pauperis* status in the courts.

Moreover, we do not have before us a member of the public or the media who has requested some portion of a transcript for non-litigation purposes, and we do not address the reasonableness of the policy in such circumstances. We decide only that as to *litigants able to pay,* the procedure adopted and enforced by the PUC for obtaining copies of transcripts is reasonable, and thus satisfies the requirements of the Act. Accordingly, the PUC's adjudication denying petitioners' request is affirmed.

### ORDER

AND NOW, this **12th** day of **November,** 1997, the motion of the Pennsylvania Public Utility Commission to quash the petition for review is denied. The adjudication of the

Pennsylvania Public Utility Commission is hereby affirmed.

PELLIGRINI, J., concurs in result only.

SMITH, J., files concurring and dissenting opinion in which KELLEY and FLAHERTY, JJ., join.

KELLEY, J., files dissenting opinion joined by SMITH, J.

SMITH, Judge, concurring and dissenting.

I join in the majority's denial of the motion to quash the petition for review on the grounds of lack of standing or mootness. On the merits, I emphatically agree with the majority's conclusion that Transcripts of hearings before the Pennsylvania Public Utility Commission (PUC) are within the definition of "public record" in Section 1(2) of the Act commonly known as the Right–To–Know Act (Act), Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. § 66.1(2). I respectfully dissent, however, from the determination that the PUC's practice of requiring litigants to secure copies of transcripts from court reporting firms with whom the PUC has entered into contracts, at terms and conditions specified by the reporting firms, constitutes compliance with the provisions of section 3 of the Act, 65 P.S. § 66.3.

Section 3 provides as follows:

Any citizen of the Commonwealth of Pennsylvania shall have the right to take extracts or make copies of public records and to make photographs or photostats of the same while such records are in the possession, custody and control of the lawful custodian thereof or his authorized deputy. The lawful custodian of such records shall have the right to adopt and enforce reasonable rules governing the making of such extracts, copies photographs or photostats.

Further, the PUC's regulation at 52 Pa. Code 5.254(a) provides: "A party or other person desiring copies of the transcript may obtain copies from the official reporter upon payment of the fees fixed therefore [sic]." Pursuant to this provision the PUC has entered into contracts that permit court reporters to set the fees that they will charge to parties or other persons requesting copies of transcripts and that also prohibit the PUC from providing copies.

First, I Point out that Section 2 of the Act, 65 P.S. § 66.2, provides: "Every public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania." The right to make photocopies of public records in Section 3 is the counterpart of the right to inspect. In any situations, of which the present case is but one example, the right to inspect without the right "to make photographs or photostats" would be of little use to the person requesting access. The two provisions together establish the basic substantive right of access conferred by the Act. Cases interpreting the Section 3 right to copy public records have held uniformly that the authority to set "reasonable rules" governing the making of copies refers to providing means of copying that are not burdensome to either party and that do not require the person making the request to pay more than the actual, reasonable cost of reproduction.

In *Hoffman v. Pennsylvania Game Commission*, 71 Pa.Cmwlth. 99, 455 A.2d 731 (1983), the Court first determined that a list of subscribers to a magazine published by the Pennsylvania Game Commission constituted a public record; it then addressed the question of making copies. "[Section 3] makes it clear that any citizen has the right to make copies, including photographic ones, while the records remain in the custody of the agency, authorizing the agency's custodian to apply reasonable rules governing the making of copies." *Hoffman*, 455 A.2d at 734. The Court stated that the applicant had no right to demand the "addressograph labels" that he tentatively sought, bu the Court would leave to the agency to determine how the information would be supplied, "whether to be reproduced by means brought to it by the applicant or by means at hand in the agency at the applicant's cost." *Id.* In *Dooley v. Luzerne County Bd. of Assessment Appeals*, 168 Pa.Cmwlth. 242, 649 A.2d 728, 729 (1994), the Court noted in *Hoffman* the agency was afforded discretion as to the means of providing copies, whether electronic

or otherwise, but "[t]he agency's discretion was limited to reproduction procedures and costs."

From the time the earliest interpretations of the Act, the courts have found in it a principle that the identity of the person making the request, so long as he or she is a citizen of the Commonwealth, and the person's reason for making the request are irrelevant. In *Marvel v. Dalrymple*, 38 Pa. Cmwlth. 67, 72, 393 A.2d 494, 497 (1978), the Court stated:

> As *Wiley v. Woods*, [393 Pa. 341, 141 A.2d 844 (1958),] makes abundantly clear, *any citizen may seek examination of any 'public record'*. This right to examine is not dependent upon any other personal or property right, privilege or immunity he may otherwise enjoy but rather whether the documents sought in the case are within the intended framework of any 'minute, order or decision . . . fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons.' (Emphasis added.)

In *Hoffman* the Court stated that the heart of the state agency's resistance seemed to be that applicant sought the list of names of subscribers to the magazine for commercial purposes or perhaps distribution of products or even literature in competition with the agency's magazine. Citing *Marvel*, the Court in *Hoffman* rejected the notion that such considerations play any role in the analysis of requests under the Act. In sum, a requested document is a public record or it is not; if it is, then any citizen has full rights of access to it, and the agency's discretion in setting rules governing the right to make copies is limited to reproduction procedures and costs.

The majority's analysis violates the principle from *Wiley, Hoffman, Marvel* and many other cases by creating, without any basis in the Act, two classes of applications and applicants. The transcripts that Petitioners here seek to copy or to have copied for them at the cost of reproduction are public records in the possession and custody of the PUC. As Petitioners note, the PUC regards the transcripts as public records. The request for

proposal RFP 1995–01, Article IX, ¶1, states: "Because the transcript is a public record, the Commission reserves the right to allow any member of the public to examine the transcript in the public files of the Commission's Harrisburg or regional offices." The transcripts are purportedly not in the "control" of the PUC only because the PUC has voluntarily entered into a contract in which it has agreed not to permit copying of the transcript that it purchased from the court reporting firm. The majority approves different treatment for these requests for public records based upon the reason for the request.

There is no dispute that a court reporter's production of a transcript constitutes a valuable professional service and that the cost of such a transcript, especially when it is voluminous, may be substantial. The PUC has argued that its procedure reasonably assesses the cost of transcripts to those persons appearing in litigation before it. The majority's acceptance of this proposition, however, reintroduces the concept that the reason for a citizen's request to inspect and to copy has some bearing on his or her rights under the Act. The Supreme Court in *Wiley* rejected this idea as inimical to the underlying purposes of the Act within a year of its adoption. I believe that this principle should be followed in this case and that the Petitioners' requests for copies of transcripts in some reasonable form, at the cost of reproduction, should be granted.

KELLEY and FLAHERTY, JJ., join in this concurring and dissenting opinion.

KELLEY, Judge, dissenting.

I emphatically join in Judge Smith's well reasoned concurrence and dissent but write separately to emphasize one important point.

In the present case, the lawful custodian of the requested transcripts or public records is the PUC. Under section 3 of the Act, commonly known as the Right–to–Know Act (Act),[1] any citizen of the Commonwealth clearly has the right to take extracts or make copies of public records while such records

---

**1.** Act of June 21, 1957, P.L. 390, *as amended*, 65      P.S. § 66.3.

are in the possession, custody or control of the lawful custodian thereof, or his authorized deputy. However, what has transpired in this case, as pointed out by Judge Smith, is that the transcripts are purportedly not in the "control" of the PUC, because the PUC has voluntarily entered into a contract in which it has agreed not to permit copying of the transcripts that it purchased from the court reporting firm. As such, any citizen desiring a copy of the transcript as a public record is forced to bear the consequences of the PUC's actions by obtaining a copy of the transcript from an entity other than the custodian and by paying a rate set by the court reporting firm. This, I believe, is in contravention of the "reasonable rules" requirement of section 3 of the Act, as interpreted by case law, to mean the authority to provide a means of copying that is not burdensome to either party and does not require the person making the request to pay more than the actual, reasonable cost of reproduction.

The majority sanctions the PUC's actions by holding that the PUC's scheme for providing a citizen with a copy of a public record is reasonable in accordance with section 3 of the Act. However, the entire policy devised by the PUC for the making of copies of transcripts flies in the face of section 3 of the Act. It does not matter, as suggested by the majority, whether a citizen requesting a public record can pay for the copies. What matters is that a citizen not be required through a custodian's "reasonable rule" to obtain a copy of a public record from an outside entity and to pay more than the actual, reasonable cost of reproduction. A custodian's relinquishment of control of the public records clearly has the potential for this result as evidenced by the facts of this case.

Accordingly, I would hold that the PUC's reproduction policy is violative of section 3 of the Act.

SMITH, J., joins in this dissenting opinion.