In re the Oral Petition of Anabelle C. BARKMAN Requesting that the Bedford County Board of Elections be Compelled to Permit her to Vote in the 1998 Primary Election as a Non–partisan.

Annabelle C. Barkman, Appellant.

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 1998.
Decided March 12, 1999.

Thomas Alan Linzey, Shippensburg, for appellant.

Douglas R. Goldhaber, Everett, for appellee.

Before SMITH, J., KELLEY, J., and McCLOSKEY, Senior Judge.

SMITH, Judge.

Annabelle C. Barkman appeals from an order of the Court of Common Pleas of Bedford County that denied her oral petition to the trial court on primary election day to compel the local election board to permit her to vote on any available ballot, although she was registered as a non-partisan. Because Barkman was registered non-partisan, the judge of elections told her that she could not vote on either the Democratic or Republican primary ballot.[1] Barkman questions whether Pennsylvania law governing primary elections unconstitutionally abridges the voting,

1. Barkman testified that the same thing happened the previous year. The only difference was that in 1997 she was offered no ballot at all, whereas in 1998 she was offered a ballot for some third party that had agreed to permit persons registered non-partisan to vote on its ballot. The ballot, however, was empty, and it would have been necessary to write in any choices.

associational and equal protection rights of electors registered non-partisan.

I

■ The facts of this matter are simple and undisputed. Barkman went to the polling place in Monroe Township on May 19, 1998 to vote in the primary election; she requested that she be permitted to choose from among the ballots that were available that day. The county board of elections confirmed the information given by the local board that she could not vote on either the Democratic or Republican primary ballot, and Barkman then made contact with the President Judge, Daniel L. Howsare, who was performing election day duties. The trial court conducted a hearing on Barkman's oral petition and thereafter denied it.[2] The court concluded that Section 702 of the Pennsylvania Election Code (Election Code), Act of June 3, 1937, P.L. 1933, *as amended,* 25 P.S. § 2812, limiting the right to vote in any party's primary elections to those registered as members of such party, did not violate Barkman's right of free association or right to vote and did not violate the principle of equal protection of the laws.

Barkman acknowledges at the outset that her case revisits the issue decided in *Nader v. Schaffer,* 417 F.Supp. 837 (D.Conn.) (three-member panel), *aff'd without opinion,* 429 U.S. 989, 97 S.Ct. 516, 50 L.Ed.2d 602 (1976), which upheld the constitutionality of a "closed" primary election. In *Nader* two individuals challenged the provision of Conn. Gen.Stat. § 9–431 in effect at that time which prohibited any person from voting at a primary election of a party unless he or she was "on the last-completed enrollment list of such party in the municipality or voting district. . . ." They contended that the statute infringed upon their rights to vote, to associate with others in support of a candidate and

to enjoy equal protection of the laws. Section 702 of the Pennsylvania Election Code, relating to qualifications of electors at primaries, provides in part: "[N]o elector who is not registered and enrolled as a member of a political party, in accordance with the provisions of this act, shall be permitted to vote the ballot of such party or any other party ballot at any primary." The situation, therefore, was essentially identical to that presented here.

More recently, the same question was presented in the case of *Ziskis v. Symington,* 47 F.3d 1004 (9th Cir.1995). There an individual elector contended that Arizona's closed primary pursuant to Ariz.Rev.Stat. § 16–467(B), which provided that each voter in a primary election be given a ballot only of the party with which the voter is affiliated in the precinct register, violated the First and Fourteenth Amendments to the United States Constitution. The Court of Appeals for the Ninth Circuit concluded that *Nader* was controlling. The court first observed that the elector was challenging the Arizona statute only as it applied to non-party, independent voters and that he sought to vote in the primary election of a party that had chosen to limit primary voting to members only. The case therefore was "analytically distinct" from that presented in *Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986).

In *Tashjian* the Supreme Court held that enforcement of a closed primary statute was unconstitutional where the party sought to open the election. The Connecticut Republican Party adopted a rule permitting independent voters to vote in its primary election. As noted in *Ziskis,* the Supreme Court expressly stated in *Tashjian* that for claims by a nonmember of a party seeking to vote in a party's primary despite its opposition, "the

---

**2.** Barkman explained to the trial court that she was following the identical procedure as in the previous year because her appeal taken to this Court at that time had been dismissed as moot, and the Supreme Court had denied allowance of appeal. She wished to return to this Court prepared to challenge any suggestion of mootness. Although Barkman's present case also is technically moot – she cannot be afforded the relief she requested from the trial court of being permitted

to vote on any available ballot in the 1998 primary election – the Court concludes that her challenge falls within exceptions to that doctrine for cases that are likely to recur yet escape judicial review and cases that involve matters of important public interest. *See Sierra Club v. Pennsylvania Public Utility Commission,* 702 A.2d 1131 (Pa.Cmwlth.), *appeal granted,* 553 Pa. 710, 719 A.2d 748 (1998).

nonmember's desire to participate in that party's affairs is overborne by the countervailing and legitimate right of the party to determine its own membership qualification." *Tashjian*, 479 U.S. at 215 n. 6, 107 S.Ct. at 549 n. 6, 93 L.Ed.2d at 524 n. 6 (citing *Rosario v. Rockefeller*, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973), and *Nader* ).

The Supreme Court in *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358, 117 S.Ct. 1364, 1370, 137 L.Ed.2d 589 (1997), recited the applicable method of analysis:

> When deciding whether a state election law violates First and Fourteenth Amendment associational rights, we weigh the character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary. Regulations imposing severe burdens must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions. (Citations and internal quotations omitted.)[3]

## II

The Court therefore turns to the precise nature of Barkman's asserted right and the burden imposed upon it. First, Barkman is not asserting a right of any registered voter to vote on all primary election ballots. By definition, as a registered non-partisan voter, she has standing to assert the rights of non-partisans, not the rights of persons registered with one party who might wish to vote in the primary of another party. In addition, she did not claim before the trial court a right to vote on the ballot of more than one party at the primary.[4] She asserts only that as a registered non-partisan, her claimed right to participate in the election that will determine the major-party candidates in the general election has been infringed.

Further, Barkman has never asserted that the requirements to become registered with a party that includes candidates for whom she might wish to vote are onerous. Under Sections 526 and 903 of the Pennsylvania Voter Registration Act, Act of June 30, 1995, P.L. 170, 25 P.S. §§ 961.526 and 961.903, the deadline in general for registering to vote or for changing registration is 30 days before the election. This Act also provides various convenient methods for registering, including submission of applications with an application for a driver's license, by mail or through numerous types of government agencies. Sections 523, 524 and 525, 25 P.S. §§ 961.523, 961.524 and 961.525. Barkman acknowledges the relative ease of the mechanics of registration, but she asserts that the Pennsylvania requirement results in disenfranchisement for the principled person who de-

---

3. At issue in *Timmons* was Minnesota's statute prohibiting "fusion" candidacies, that is, barring any candidate from appearing on the ballot as representing more than one political party. The Supreme Court concluded that the burden this provision placed on a minor party that wished to nominate the same candidate as a major party (with the candidate's consent) did not create a severe burden on the ability of the minor party or its members to endorse, support or vote for anyone they pleased and did not directly limit the party's access to the ballot. Compare Section 910 of the Election Code, 25 P.S. § 2870, relating to affidavits of candidates, which requires a sworn statement that the candidate is not a candidate for nomination for the same office of any party other than the one designated in his or her petition, unless he or she is a candidate for judge of the court of common pleas or the Philadelphia Municipal or Traffic Courts or for the offices of school director or justice of the peace.

4. The District Court in *California Democratic Party v. Jones*, 984 F.Supp. 1288 (E.D.Cal.1997), aff'd, 169 F.3d 646 (9th Cir.1999) (adopting trial court opinion), discussed the many variations that exist on "open" and "closed" primary elections. An "open" primary is one in which a registered voter may request on election day the ballot for any party's primary in which the voter intends to vote, regardless of previous registration, but the voter may vote in only one party's election. A "blanket" open primary, such as was adopted by the California electorate in approving Proposition 198 in March 1996, which was at issue in *California Democratic Party*, permits any registered voter to vote for any candidate of any party. A "semi-closed" primary is one where only party members or those registered non-partisan may vote in a party's primary. This describes the nature of Barkman's request to the trial court.

sires to have no public ongoing affiliation with a particular party.

The Court of Appeals in *Ziskis* relied upon *Nader* in addressing this issue, first pointing out that this asserted burden was a minimal infringement on the voter's rights to free association, to vote and to equal protection, which did not warrant strict review. The Court then stated:

> In *Nader*, as in this case, registering as a member of a party 'is not particularly burdensome, and it is a minimal demonstration by the voter that he has some "commitment" to the party in whose primary he wishes to participate.' [*Nader*, 417 F.Supp.] at 847. If the independent voter 'choose[s] not to associate, by not enrolling in a party, [his] right to vote in the general election is unaffected.' *Id.*

*Ziskis*, 47 F.3d at 1006. The Court of Appeals went on to state that there was no showing that the voter was interested in nominating candidates who were most faithful to the policies and philosophies of the parties:

> Indeed, Ziskis's 'refusal to join any of the voluntary associations, which are organized for the purpose of effectuating their members' political goals, is fundamentally inconsistent with any claim that [he is] as "interested" as party members in the outcome of the party nominating process.' [*Nader*, 417 F.Supp.] at 848. *Thus, given the state's interest in protecting the associational rights of party members and in preserving the integrity of the electoral process, the state may legitimately allow*

*political parties to close their primaries to nonmembers.*

*Id.* (emphasis added).

Barkman contends that she does not desire to participate in any party's affairs but to participate in the fundamental governmental activity of an election, at public expense, presumably for the general good. She asserts that the discussion in *California Democratic Party* indicates that state interests traditionally advanced in support of a closed primary are relatively insubstantial and do not justify intrusion on the voting rights of the independent voter. Barkman's reliance upon *California Democratic Party*, however, is misplaced. The crucial distinction between the present case and *California Democratic Party* is that in the latter the electorate as a whole, and by a convincing margin cutting across all major party and demographic lines, had chosen the blanket primary as its preferred method when it adopted Proposition 198 in March 1996. The question there was whether such a system could withstand a constitutional challenge by the political parties, which opposed it. The question was not whether the previous closed primary system was unconstitutional or whether the new system was constitutionally required.

■ In affirming the District Court's decision in *Nader*, the United States Supreme Court established controlling precedent that the type of interest advanced by Barkman does not outweigh the interests of political parties and of the state that are embodied in a duly enacted, closed method of conducting primary elections. The Supreme Court reaffirmed that precedent in *Tashjian*, and the Court of Appeals in *Ziskis* concluded that *Nader* controls in a case such as this.[5] This

5. In a reply brief Barkman raises the additional argument that the District Court in *Nader* reviewed the entire framework established by Connecticut statutes for the conduct of primary and general elections in order to determine the "character and magnitude" of the asserted injury to the rights of the plaintiffs. She asserts that the provisions for a minor party to achieve a place on the ballot in Connecticut create far lower hurdles than comparable provisions in Pennsylvania. In *Nader*, she notes, the court responded to an argument that alternative avenues of political expression were ineffectual and unrealistic in part by pointing out in a footnote the successes over the years of candidates from other than the Republican and Democratic Par-

ties in achieving both minor and major party status and in gathering the sufficient number of signatures to entitle them to be placed on the ballot for the general election. *Nader*, 417 F.Supp. at 843 n. 5. Barkman argues that this alleged difference fundamentally alters the "components of the equation" employed by the courts in *Nader* and *Tashjian*, with the result that what was a minimal burden in *Nader* has become a significant burden in the present case.

The Court does not agree. The holding in *Nader* was not premised upon liberal access to the ballot by minor parties. Barkman does not acknowledge that immediately following the footnote on which she relies the court stated that the dominant position of the Republican and Demo-

Court agrees with the Court of Appeals and therefore affirms the trial court's denial of Barkman's oral petition.

## *ORDER*

AND NOW, this 12th day of March, 1999, the order of the Court of Common Pleas of Bedford County is affirmed.

cratic parties did not result from discrimination in their favor from the state but rather resulted from their being successful, over a period of time, in attracting the bulk of the electorate.