**Bernard J. HESSLEY, Individually and Chairman of the Warren County Democratic Committee, Appellant,**

v.

**Richard CAMPBELL, Robert Williams, and Howard Brush, Commissioners of Warren County.**

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 2000.

Decided May 15, 2000.

Bernard J. Hessley, Warren, for appellant.

Todd A. Woodin, Warren, for appellees.

Before DOYLE, President Judge, and McGINLEY, J., SMITH, J., FRIEDMAN, J., KELLEY, J., FLAHERTY, J., and LEADBETTER, J.

FRIEDMAN, Judge.

Bernard J. Hessley, individually and as Chairman of the Warren County Democratic Committee, appeals from an order of the Court of Common Pleas of the 37th Judicial District of Pennsylvania, Warren County Branch (trial court), dismissing

Hessley's Appeal From Denial of Copying Public Records (Appeal).[1] We reverse.

Hessley, in his individual capacity, requested from the Warren County Voter Registration Office a copy of the computer diskettes that contain voter registration information for the County. Instead of the computer diskettes that he requested, the Voter Registration Office gave Hessley, at no charge, a paper list of registered voters in alphabetical order.

Subsequently, in a March 23, 1999 letter to the Commissioners of Warren County (Commissioners), Hessley, in his capacity as Chairman of the Warren County Democratic Committee, requested a copy of the computer diskettes. Hessley offered to supply the Voter Registration Office with blank diskettes and to pay the reasonable cost of the public employees' time in copying the County voter registration information onto those diskettes. (R.R. at 22–23.) The Commissioners responded to Hessley's request in a letter dated March 31, 1999, stating: "I will be glad to provide you the voter registration information on diskettes as requested. The cost is $300.00. Please make your check payable to the Warren County Voter Registration Office." (R.R. at 24.)

On April 16, 1999, Hessley filed his Appeal with the trial court under the statute commonly known as the Right–to–Know Act.[2] (R.R. at 19–21.) In that Appeal, Hessley averred that the time required to copy the diskettes is "minimal" and that $300.00 does not represent the reasonable cost of copying the voter registration information to his blank computer diskettes. (R.R. at 20.) The Commissioners filed a Reply essentially admitting the facts set forth by Hessley, but asserting that $300.00 is the standard charge for the voter registration information on computer diskettes. (R.R. at 28.)

The trial court, following argument on the matter, determined that the Commissioners did not violate the Right–To–Know Act. The trial court reasoned that, pursuant to *Hoffman v. Pennsylvania Game Commission,* 71 Pa.Cmwlth. 99, 455 A.2d 731 (1983), the Commissioners were not required to provide public records to Hessley in a format that would be convenient for Hessley. The trial court also determined that, pursuant to *Sierra Club v. Pennsylvania Public Utility Commission,* 702 A.2d 1131 (Pa.Cmwlth.1997), *aff'd,* 557 Pa. 11, 731 A.2d 133 (1999), the Commissioners were not required to charge Hessley only the reasonable cost of copying those records.[3] The trial court explained

---

1. Section 4 of the Act commonly known as the Right–to–Know Act, Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. § 66.4, states that any citizen of the Commonwealth of Pennsylvania denied any right granted under sections 2 and 3 of the Right–to–Know Act may appeal from such denial, and, if the court determines that the denial was not for just and proper cause, the court may enter an order for disclosure as it deems proper.

2. Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. § 66.1–66.4.

3. In *Sierra Club,* a litigant in a "base rate proceeding" before the Public Utility Commission (PUC) sought a copy of the 2,400-page transcript at the cost of reproduction. This court held that, pursuant to a *reasonable PUC procedure,* the litigant was required to purchase a copy of the transcript from a *private* court reporting firm for the $2.45–per–page fee fixed by the firm. *Id.* In so holding, this court agreed with the PUC that its policy

was reasonable because "base rate cases are voluminous" and because "the court reporting firms have resources to meet turnaround and copying requirements that the PUC lacks." *Id.* at 1136. However, in this case, although the County's voter registration records may be "voluminous," the County does not lack the resources to copy those records to computer diskettes. Thus, there is no reason for the County to charge anyone a copying fee as if it were a private contractor.

Moreover, we note that the seven-judge en banc panel in *Sierra Club* was not unanimous in rendering its decision. Only three of the seven judges joined in the majority opinion; one judge concurred in the result only; and three judges dissented. The dissenters pointed out that the majority limited its holding to litigants who are able to pay the fee fixed by the court reporting firm. In other words, the holding in *Sierra Club* does *not* apply to non-litigants or litigants unable to pay the fee. The dissenters criticized the unjustified cre-

that, under *Sierra Club*, the Commissioners could charge Hessley more than the mere cost of reproducing the diskettes because the Commissioners are providing a service and because the records are more valuable on diskettes. (R.R. at 32.) Thus, the trial court dismissed Hessley's appeal.

On appeal to this court,[4] Hessley argues that the trial court erred in concluding that the Commissioners complied with the requirements of the Right–to–Know Act. We agree.

Section 3 of the Right–to–Know Act, 65 P.S. § 66.3 (emphasis added), states, in pertinent part, as follows:

> Any citizen of the Commonwealth of Pennsylvania shall have the right to . . . make copies of public records . . . while such records are in the possession, custody and control of the lawful custodian thereof or his authorized deputy. The lawful custodian of such records shall have the right to adopt and enforce *reasonable* rules governing the making of such . . . copies. . . .

Further, sections 307 and 703 of the Pennsylvania Voter Registration Act[5] (Voter Registration Act) provide reasonable rules, set forth by the legislature, to govern the accessibility of a certain type of public record, a "street list."[6] Section 307 states that a county's "street list" is open to public inspection and that, "[u]pon request, a photocopy of the record or computer-generated data record shall be provided [to the public] at cost."[7] Section 703 of the Voter Registration Act states that, upon request, the Commissioners shall distribute "the [street] list" to political parties, political bodies and candidates (political entities) at no charge.[8] 25 P.S. § 961.703.

Hessley requested a copy of the County's computer-generated data records, offering to supply blank computer diskettes and to pay reasonable copying costs. Hessley made this request as a political entity; however, even if Hessley had made the request as a member of the general public, the Commissioners would have been obligated to grant his request under section 307 of the Voter Registration Act. The Commissioners agreed to copy the computer-generated data records onto Hessley's blank diskettes for $300.00. However, it would have cost the Commissioners practically *nothing* to copy the County's existing data records to Hessley's

---

ation of two classes of citizens and concluded that, under the Right–To–Know Act, *all* citizens should be able to obtain a copy of a transcript for the cost of reproduction.

4. Our scope of review is limited to determining whether the denial of Hessley's request was for just and proper cause. *Sierra Club*.

5. Act of June 30, 1995, P.L. 170, 25 P.S. §§ 961.307 and 961.703. Section 103 of the Voter Registration Act, 25 P.S. § 961.103, states that the statute applies to all counties.

6. A "street list" is a list of the names and addresses of all registered electors, arranged in one of the following manners: (1) by streets and house numbers; (2) alphabetically by last name; or (3) in a manner whereby the location of the elector's residence can be identified. Section 703 of the Voter Registration Act, 25 P.S. § 961.703.

7. We note that, in *Hoffman*, an individual sought a computer mailing list in the form of "addressograph labels." This court held that the individual was entitled to the mailing list, but we gave the agency the option of reproducing the list in some other form. *Id.* However, the individual in *Hoffman* was neither a political candidate nor another political entity; therefore, his right to public information was limited by and governed by the Right–To–Know Act. Because the Voter Registration Act specifically entitles a political entity to voter registration information in the form of computer-generated data records, *Hoffman* is not controlling here.

8. Under section 1932 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932, parts of statutes in pari materia shall be construed together, if possible, as one statute. To the degree that section 3 of the Right–To–Know Act and sections 307 and 703 of the Voter Registration Act relate to the accessibility of public records by the public, they are in pari materia. We note, however, that the Voter Registration Act gives rights to political entities beyond those that they enjoy as members of the public.

computer diskettes. Hessley was supplying the diskettes, and the Commissioners admitted that the time required to copy the County's data records to diskettes is "minimal." [9] (Appeal, para. 4; Reply, para. 4; R.R. at 20, 28.) Thus, the Commissioners did not have just and proper cause for charging Hessley $300.00 to copy the County's data to Hessley's diskettes.

▰ Moreover, because Hessley made his request as a political entity, *not* as a member of the general public, the Commissioners had a duty under section 703 of the Voter Registration Act to provide the County's "street list" data records to Hessley at no charge.[10] Certainly, the general public's right to the County's "street list" information at cost extends to political entities, which are a specific segment of the general public. However, under section 703 of the Voter Registration Act, a political entity is entitled to "street list" information at no charge.[11] Accordingly, we hold here that, where a county maintains a computerized "street list," the county is obligated to distribute that "street list" to a political entity, on diskettes when so requested, at no charge.[12]

For the reasons set forth above, we reverse.[13]

9. Although the Commissioners wanted to charge Hessley $300.00 to copy the County's diskettes, the Commissioners gave Hessley a paper list at no charge. It is unreasonable to believe that inserting Hessley's diskettes into the County's computer and entering a "copy" command could cost more than printing a paper list containing the same information. Moreover, in these days, when we can save our forests by creating electronic rather than paper lists, there is a duty to do so. *See* Article I, Section 27 of the Pennsylvania Constitution; *see also* section 1 of the Act of June 19, 1941, P.L. 143, *as amended,* 44 P.S. § 19.1 (requiring the Governor to designate an Arbor Day).

10. Were the court to decide this case solely under the Right–to–Know Act, we hold that the county could charge Hessley for the cost of the diskette(s) upon which the information is provided.

11. Section 704(c)(1) of the Voter Registration Act provides that, after receiving a proper request, the Commissioners shall provide "paper copies" of the county's public information lists to registered voters. 25 P.S. § 961.704(c)(1). Thus, if the legislature intended in section 703 that the Commissioners distribute only *paper* "street lists" to political entities, the legislature could have used the language found in section 704.

Because section 703 of the Voter Registration Act does not specifically authorize a county to select which arrangement of the "street list" it provides to political entities, it would appear that, under the Voter Registration Act, as opposed to the Right–To–Know Act, a political entity may request the "street list" in any arrangement the county is capable of producing from its existing data base. Here, Hessley has indicated that he prefers a "street list" arranged by streets and house numbers. However, in the petition before us, Hessley seeks only a copy of the County's raw data on diskettes; at some point, Hessley intends to purchase a computer program that would arrange the raw data into the desired format. Nevertheless, where a county can provide a candidate with its data records arranged as desired by the candidate at no additional cost to the county, the county should provide the information in that arrangement.

12. The fact that the Commissioners charged other entities $300.00 for the County's voter registration information is irrelevant. There is no evidence that the other entities were political parties, political bodies or candidates seeking the information under the Right–to–Know Act or the Voter Registration Act. In fact, it appears that the other entities were commercial enterprises that produce voter lists for a profit. (Appeal, paras. 3, 5–6, 10; Reply, paras. 3, 5–6, 10; R.R. at 19–20, 28–29.) In that regard, we note that section 307 of the Voter Registration Act states that "[street lists] may not be used for commercial or improper purposes." 25 P.S. § 961.307.

13. In holding as we do, we are cognizant of the fact that political candidates have only three weeks in which to collect signatures on their nomination petitions. Section 908 of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. § 2868. To enable candidates to canvass petitioners and voters in their election districts in the most efficient manner possible and to facilitate the involvement of all registered voters in the political process, the "street lists" should be available to political entities in the manner most useful to fulfill these purposes. We note that the alphabetized list provided to

## ORDER

AND NOW, this 15th day of May, 2000, the order of the Court of Common Pleas of the 37th Judicial District of Pennsylvania, dated April 29, 1999, is reversed.

LEADBETTER, Judge, Dissenting.

I respectfully dissent. It is undisputed that appellants have been provided with an alphabetical street list free of charge. I believe this satisfies the Commissioners' duties under both the Right–to–Know Act and the Voter Registration Act.

The first statute provides, as the majority notes, that citizens be given the right to inspect public records and that rules regarding their right to copy such records must be reasonable. It does not in any way suggest that requestors may demand that data be produced in a particular format or medium they find most desirable. The Voter Registration Act specifically provides that streets lists may be prepared and distributed "[a]lphabetically by last name of registrant"[1] and that "the commission shall provide paper copies of the public information lists and may provide copies in some other form..."[2] Since the Commissioners have distributed the material in a way specifically sanctioned by the Voter Registration Act, I fail to see how this could be deemed anything other than reasonable under the Right–to–Know Act. Further, I believe that providing the information in some reasonable manner is all that the [RTK] Act requires.

The majority's analysis centers upon the fact that the Commissioners could provide the data on computer disks at minimal cost, but instead choose to charge a hefty fee to those who wish to obtain the benefits of the Commissioners' labor in computerizing the information. It concludes that this practice is unreasonable.[3] However, I believe this is relevant only if requestors are entitled to demand information in computerized form. Since they are not, I would affirm the order of the court of common pleas.

---

Hessley impedes the achievement of these goals.

**1.** 25 P.S. § 961.703(a)(2).

**2.** 25 P.S. § 961.704(c)(1) (emphasis added).

**3.** I disagree that any conclusion as to reasonableness can be drawn without a full record explaining the costs associated with computerizing the data in the first place, since I believe that is part of what those who desire computerized data are paying for.