Edmund GOPPELT

v.

**CITY OF PHILADELPHIA REVENUE
DEPARTMENT, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 21, 2003.
Decided Jan. 9, 2004.

Eleanor N. Ewing, Philadelphia, for appellant.

Michael Churchill, Philadelphia, for appellee.

BEFORE: FRIEDMAN, Judge, and COHN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

The City of Philadelphia, Department of Revenue (Appellant), appeals from an order of the Court of Common Pleas of Philadelphia County (trial court), entered June 24, 2003, requiring Appellant to permit Edmund Goppelt (Appellee) to have access to the record of mailing addresses of delinquent real estate tax payers. Appellee requested the documents under the statute commonly known as the "Right to Know Act," Act of June 21, 1957, P.L. 390, as amended, 65 P.S. § 66.1–66.9 (the Act). We affirm.

On January 8, 2003, Appellee directed a request to Appellant under the Act. Appellant requested information relating to outstanding real estate delinquencies.[1] Appellant failed to respond to Appellee's written request within the five-(5) day statutory time period for non-Commonwealth agencies as required by the Act. See Section 3.4 of the Act, as amended, added by Section 4 of the Act of June 29, 2002, P.L. 663, 65 P.S. § 66.3–4. On January 22, 2003, still having received no response from Appellant, Appellee filed a notice of appeal with the trial court, alleging that Appellant's failure to respond to his request was deemed to be a denial under the Act. See id.

Thereafter, by letter dated January 24, 2003, Appellant acknowledged Appellee's request but stated that it was unclear about the specific data that Appellee was interested in obtaining for each delinquent account. Appellant requested that Appellee provide it with more information. Thereafter, the parties engaged in several discussions regarding the type of information available and its format. As a result of those discussions, on February 10, 2003, Appellant provided Appellee with a list of "table layouts" available in Appellant's real estate tax system database. On February 26, 2003, Appellee requested copies of certain of those tables.

On February 27, 2003, the trial court conducted a status conference regarding the appeal that had been filed before it. The trial court held the matter under advisement pending the parties' efforts to amicably resolve their issues. By letter dated March 19, 2003, Appellee acknowledged receipt of many files but complained that certain information was "missing," including, but not limited to, mailing addresses where they differed from the address of the tax-delinquent property.[2] In some instances the delin-

---

1. Appellee operates a website, Hallwatch.com. He stated in his letter that he was "working on a story about real estate delinquencies," and in connection therewith was requesting a list of "the outstanding real es-

tate delinquencies as a tab delimited text file" format. (R.R. at 9a).

2. The other information that Appellee believed to be missing at that time is not part of this appeal.

quent property owner had provided Appellant with a different address than that of the tax-delinquent property to be used as an "off-site mailing address" for real estate tax bills and other correspondence. Appellant had entered this information into its database, but redacted that information from the information that it had provided to Appellee. Appellant responded by letter dated March 25, 2003, that the information requested relating to the off-site mailing addresses did not fall under the Act's definition of "public record" and that the disclosure of such information "has personal safety and privacy implications." *See* Section 1 of the Act, *as amended,* 65 P.S. § 66.1.

The trial court conducted a hearing into this matter on May 6, 2003. Prior to that time, Appellant had produced data to Appellee regarding tax-delinquent properties in Philadelphia, including the names of the property owners, property addresses, and information regarding the delinquencies. The sole information withheld was the off-site mailing addresses. On June 24, 2003, the trial court entered an order directing Appellant to permit Appellee to access the records of mailing addresses of delinquent real estate taxpayers. Appellant then filed a notice of appeal that is now before this Court.

■ On appeal,[3] Appellant argues that the trial court erred by ruling on Appellee's request for off-site mailing addresses in that the addresses are not a proper subject for this appeal, since the written request only sought information relating to "outstanding real estate delinquencies." Appellant contends that Appellee did not request the information pertaining specifically to off-site mailing addresses until the parties engaged in discussions after Appellee had filed the notice of appeal, and, hence, Appellant did not deny that request until after Appellee had filed the notice of the appeal. Appellant argues, therefore, that the issue relating to off-site mailing addresses was not properly before the trial court, as the denial did not occur until after the notice of appeal was filed.

However, Appellant's argument is not properly before this Court as Appellant waived the issue by failing to raise it before the trial court.[4] Pennsylvania Rule of

---

**3.** Our scope of review in a Right to Know Act case is whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *See* Section 4 of the Act, *as amended,* 65 P.S. § 66.4. We note that when the General Assembly amended Section 4 of the Act through its enactment of the Act of June 29, 2002, P.L. 663, it deleted the earlier language of Section 4 which provided that the Court's scope of review was whether the denial was just and proper. *See also, Martella v. Department of Transportation,* 841 A.2d 633 (Pa.Cmwlth. 2004).

**4.** This argument also appears to be disingenuous. Appellee's written request sought the broad category of information related to "outstanding real estate tax delinquencies." We note that Appellant ignored Appellee's request. If it were uncertain as to the scope of

the request, it did not timely request clarification or additional information. Rather, it was only after Appellee filed the notice of appeal with the trial court that Appellant contacted Appellee in an attempt to resolve the matter and to clarify what information Appellee sought pursuant to his request. The parties then attempted to resolve the matter through the identification and production of relevant information that could be disclosed under the Act. As a result of their attempts, certain information was produced. The efforts of the parties resulted in a narrowing of the issues for consideration by the trial court. However, it did not somehow absolve Appellant of its duty and initial failure to produce the requested information. Nor did it make the mailing addresses into information that is somehow outside of the scope of information pertaining to "outstanding real estate delinquencies." Moreover, we note that it appears that at the status conference conducted by the trial

Appellate Procedure 302(a) states that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa. R.A.P. 302(a).[5] Based upon our review of the record, we conclude that Appellant did not raise or preserve the issue before the trial court, hence, it cannot now raise the issue before this Court.

■ Appellant next argues that the trial court erred in holding that the off-site mailing addresses constitute "public records" under the Act. Section 2 of the Act provides, in pertinent part, as follows:

(a) General rule. Unless otherwise provided by law, a public record shall be accessible for inspection and duplication by a requester in accordance with this act. A public record shall be provided to a requester in the medium requested if the public record exists in that medium; otherwise, it shall be provided in the medium in which it exists. Public records shall be available for access during the regular business hours of an agency. Nothing in this act shall provide for access to a record which is not a public record.

Section 2 of the Act, 65 P.S. § 66.2. A party asserting a right to disclosure of documents pursuant to the Act must establish that the requested documents were generated or kept by "an agency"[6] and that they constitute "public records." *See Safety, Agriculture, Villages and Environment, Inc. v. Delaware Valley Regional Planning Commission,* 819 A.2d 1235 (Pa. Cmwlth.2003). The party seeking access bears the burden of establishing that the requested material bears the characteristics of a public record. *LaValle v. Office of General Counsel of Commonwealth of Pennsylvania,* 564 Pa. 482, n. 13, 769 A.2d 449, n. 13 (2001).

Section 1 of the Act defines a "public record" as:

Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency ... [not including] any record, document ... which is restricted ... which would operate to the prejudice or impairment of a person's reputation or personal security...."

65 P.S. § 66.1. This Court has held that the "essential components" of a public record must be disclosed. *See LaValle.* "The party seeking to inspect government records must establish some close connection between one of the statutory categories [of the Act., i.e., an account/voucher/contract or a minute/order/decision] and the material sought." *LaValle,* 769 A.2d at 456.

Appellant argues that the off-site mailing addresses sought by Appellee are not an essential component of Appellant's accounts relating to real estate tax delinquencies. It contends that the off-site mailing addresses merely represent a convenience extended to property owners who remain liable for the payment of real estate taxes on their properties regardless of whether or not they provide an alternative address. It further contends that whether it accommodates a property owner's request to send bills and other correspondence to a second address or to another person has nothing to with the receipt of taxes, the determination of the amount of

---

court, the parties agreed to attempt to resolve as many issues as possible and move forward with those issues on which they were unable to reach resolution.

**5.** We note that Appellant did not in its brief specify the manner in which it raised or pre-

served this issue before the trial court, as required by Pa. R.A.P. 2117(c).

**6.** There is no dispute that the Appellant is "an agency" under the Act.

tax due or whether outstanding real estate tax is owed. No decision of any consequence is made by Appellant based on these addresses.

Appellee argues that Appellant has the duty to send tax bills and collect the taxes due from property owners and that Appellant uses the off-site mailing addresses to notify property owners of that obligation and for all other communications. Appellee contends that the trial court correctly determined that the address "is critical for billing and collection of revenue. Accordingly, the mailing address is an essential component of [Appellant's] course of business and falls within the definition of a public record." (R.R. at 7a). Appellee argues that there is a close connection between the amount owed, the name of the person billed and the address billed, such that the off-site mailing addresses are essential components of the account.

In addition, Appellee argues that the close relationship between a property and the address of its owner is evidenced by statutory law which provides that in every county the board of revision of taxes shall establish records of real property for every parcel of land which will include "in detail the description, character and size of the land and buildings and other improvements, together with the name and address of the owner or owners thereof. . . . Any taxable inhabitant of the county shall have the right, at any time during office hours, to examine such records." Section 6 of the Act of June 27, 1939, P.L. 1199, 72 P.S. § 5341.6. Appellee takes the position that under this statutory provision, the address of the owner, not just the address of the property, is part of the statutorily

designated public record.[7] Given that Appellant is responsible for billing and collecting taxes from the owners of property, Appellee argues that it is apparent that Appellant's maintenance of off-site mailing addresses should be considered a public record as well.[8]

We agree with the trial court that because Appellant allows a property owner "to register an alternative address for the purposes of sending bills and notices concerning the taxed property the alternative address is critical for billing and collection of revenue." (R.R. at 7a). Presumably, such an address also would be used by Appellant for service of process relating to actions taken against the property owner. Accordingly, the off-site mailing address is an essential component of the account and falls within the definition of public record.

 Lastly, Appellant argues that the off-site mailing addresses are exempt from disclosure for reasons of personal security and/or privacy. Section 2 of the Act prohibits the disclosure of public documents, or portions thereof, that "would operate to the prejudice or impairment of a person's reputation or personal security. . . ." "Personal security" has been defined by this Court as "freedom from harm, danger, fear or anxiety." *Times Publishing Company v. Michel,* 159 Pa.Cmwlth. 398, 633 A.2d 1233, 1236 (1993), *petition for allowance of appeal denied,* 538 Pa. 618, 645 A.2d 1321 (1994). "In addition, this Court has interpreted the personal security and personal reputation exceptions as creating a privacy exception to the Act's general disclosure rule." *Cypress Media, Inc., v.*

---

7. Appellant contends that although the language of the statute reads "address of the owner," that language actually means "address of the property." We disagree.

8. Also, Appellee notes that Appellant does not explain why neighbors seeking to deal with an absentee owner of an abandoned building or a vacant lot should be relegated to the site address when Appellant has an address which it uses for billing and communications.

*Hazleton Area School District,* 708 A.2d 866, 870 (Pa.Cmwlth.1998).

Appellant contends that while a person's ownership of property may justify public disclosure of their name and property address in connection with tax delinquencies on that property, the mere fact of that property ownership (or even tax delinquency on that property) does not affect the property owner's interest in privacy at another address. Appellant takes the position that many of the alternative mailing addresses *may* be the home addresses of the property owners, and as such, should be prohibited from disclosure for privacy and security reasons. Appellant posits that a property owner's interest in avoiding a possible abuser, or harassment or harm by persons disgruntled by decisions the property owner may have taken in an occupational capacity, is completely independent of property ownership, and might be one reason why the property owner does not reside at the property. It argues that Appellee has demonstrated no need sufficient to overcome these interests.

Appellee argues that property owners can voluntarily provide Appellant with an off-site mailing address for purposes of receiving bills and notices. The off-site mailing addresses may or may not be home addresses. Additionally, Appellee contends that there is no expectation of privacy, given that the very instruction form sent with the property owner's bill explicitly informs the property owner that the social security number will be kept confidential, thereby alerting the property owner that all other required information is not confidential and may be disclosed. (R.R. at 48a). Moreover, statutory law specifically makes the address of a property owner public information and subject to disclosure when it is collected by the Board of Revision of Taxes. *See* Section 6 of the Act of June 27, 1939, P.L. 1199, *as amended,* 72 P.S. § 5341.6. Appellee argues that since the General Assembly requires another arm of the very same municipality to disclose the address of a property owner, the disclosure of that information by Appellant cannot be considered a threat to privacy and personal security. Moreover, Appellee notes that Appellant discloses the home addresses of resident property owners because their home address is the same as their property address—it is only absentee property owners who benefit from the nondisclosure of the off-site mailing addresses, which may or may not be home addresses.

In *Times,* this Court recognized a need to balance a person's privacy rights with the benefits of disclosure. We held that the proper approach is "a balancing test, weighing privacy interests and the extent to which they may be invaded, against the public benefit that would result from disclosure." *Times,* 633 A.2d at 1239.

■ We recognize that in some instances this Court has prohibited the disclosure of home addresses. *See Sapp Roofing Company, Inc., v. Sheet Metal Workers' International Association, Local Union No. 12,* 552 Pa. 105, 713 A.2d 627 (1998); *Bargeron v. Department of Labor and Industry, Unemployment Compensation Board of Review,* 720 A.2d 500 (Pa. Cmwlth.1998); *Cypress Media; Times.* Appellant seems to suggest that these cases stand for the proposition that home addresses constitute confidential information the disclosure of which is prohibited under the Act and right to personal privacy. However, such is not the case, as this Court has required the disclosure of home addresses in some circumstances. *Moak v. Philadelphia Newspapers, Inc.,* 18 Pa. Cmwlth. 599, 336 A.2d 920 (1975). As discussed above, whether home addresses are discoverable is dependent upon whether the benefit of disclosure outweighs the

privacy interests in non-disclosure. *See Times.*

In *Times*, the Court held that the disclosure of addresses, along with telephone and social security numbers, found on applications pertaining to licenses to carry firearms were not subject to disclosure under the Act. In assessing whether disclosure would be appropriate, the Court found significant that:

> If the address of firearms licensees are made public, this information could become available to individuals unable to obtain firearms legally who might burglarize homes in search of firearms. Furthermore, disclosure of the licensees' address would make public the address of for example abuse victims who apply for a gun permit as well as judges, prosecutors, parole and probation officers and others in law enforcement who are licensed to carry firearms and necessarily take precautions to shield information about their address. The possibility that individuals could obtain the address of such individuals poses a threat to their personal security, and given the inherent dangers associated with possession of firearms, disclosure of the licensees' address is 'intrinsically harmful' and should therefore be precluded by the personal security exception to the Act.

*Times*, 633 A.2d at 1237. The Court held that the public disclosure of the licensees' home address and telephone and social security numbers was not warranted because the benefits from disclosure did not outweigh the personal security and privacy interests present in the case. *Times.*

In *Cypress Media*, the Court prohibited the disclosure of home addresses, home telephone numbers and social security numbers found in applications submitted by persons seeking teaching positions in a school district on the basis that the entity seeking disclosure did not argue that the disclosure of such information would be beneficial. In light of the lack of argument on that issue, the Court stated that "[t]here is nothing, therefore, to weigh against the applicants' privacy interests in this information, and the balance necessarily tips in favor of nondisclosure." *Cypress Media*, 708 A.2d at 870.

In *Sapp Roofing*, a union requested that a school district disclose copies of payroll records related to contractual roofing work performed on three school district buildings to determine whether the school district had complied with the Pennsylvania Prevailing Wage Act, Act of August 15, 1961, P.L. 987, *as amended*, 43 P.S. 165–1—165–16. The requested records contained the names and addresses of employees who worked on three roofing projects, along with their social security numbers, job positions, rates of pay and hours worked on the job. In determining that the employees' privacy interests would be infringed by the dissemination of the documents containing personal information, including their home address, the court concluded that the personal information reveals little, if anything, about the school district's compliance with the Pennsylvania Prevailing Wage Act and that it would not enhance the enforcement of the Pennsylvania Prevailing Wage Act. The Court balanced the "weak public interest in disclosure" against the privacy and personal security issues, and it concluded that the individuals' interests were not outweighed. *Sapp Roofing*, 552 Pa. at 112, 713 A.2d at 630.

In *Bargeron*, the Court upheld the nondisclosure of certain unemployment compensation petitions for appeals and notices of hearings which contained some personal information, including home addresses. The Court based its opinion on the fact that there was no public benefit that out-

weighed privacy interests. The records were sought solely because the individual, an attorney, wished to solicit business from the claimants and employers. Specifically, he wanted to represent them in unemployment compensation matters.

In the case at hand, the disclosure of the off-site mailing addresses benefits the public by allowing communications to be made regarding a property from which the owner is absent. These communications could include the voicing of concerns regarding the condition of the property or the actions of the tenants of the property, the provision of useful information regarding the property or surrounding neighborhood that would otherwise be unknown to an absent property owner, offers to purchase or lease, or service of process where appropriate. In addition, a member of the public viewing the information may determine that he has information regarding an incorrect old address listed and be able to provide Appellant with useful information for its effort to collect taxes owed. Other benefits may also abound.

Further, it is significant that the addresses are voluntarily submitted by the property owners and are not necessarily their home addresses. The off-site address may be a post office box, a mail drop, the address of a friend, relative or associate, a business address, the address of an accountant, attorney or agent, or any other address of the property owner's choosing. Also, significant is the fact that the General Assembly has legislated with regard to the board of tax revisions in each county that the address of a property owner must be made available to the public when requested.

Moreover, the privacy and security concerns raised by Appellant are highly speculative and would only apply to absent property owners who choose to provide their home address as an alternative address. As discussed above, many options exist with regard to the possibilities for off-site mailing addresses where the property owner views privacy or security as a concern. Therefore, we conclude that the trial court correctly ruled that the benefit of disclosure outweighed the privacy and security issues.

For these reasons, we believe that the circumstances of the case at hand warrant the disclosure of the off-site mailing addresses, some of which may be home addresses that were voluntarily provided by property owners.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 9th day of January, 2004, the order of the Court of Common Pleas of Philadelphia County, entered June 24, 2003, is hereby affirmed.