**Norman A. INKPEN, Jr., Appellant**

v.

**Valerie McDonald ROBERTS, Recorder of Deeds of the County of Allegheny.**

Commonwealth Court of Pennsylvania.

Argued Oct. 5, 2004.

Decided Dec. 1, 2004.

BEFORE: COHN JUBELIRER, Judge, SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

This certified interlocutory appeal raises an issue of first impression: whether mortgages and deeds filed in the Allegheny County Recorder of Deeds office are "public records" under the statute commonly known as the Right to Know Act (Act)[1] such that duplication costs are limited by Section 7 of the Act?[2] We hold those documents do not fall within the Act's definition of public records, and pre-existing statutes control the cost of duplication.

In early March 2003, the Allegheny County Recorder of Deeds (Recorder) received a written request under the Act from Norman A. Inkpen, Jr. He asked for duplicate rolls of microfilm containing all deeds and mortgages filed in Allegheny County in December 2002. Inkpen indicated he was prepared to pay a reasonable fee for the copies.

Recorder's solicitor responded he did not consider the requested documents public records as defined by the Act. The solicitor indicated how Inkpen could obtain the requested copies by contacting Recorder's vendor.

Inkpen filed a complaint in mandamus in the Court of Common Pleas of Allegheny County (trial court) based on the Act. After an answer, Inkpen filed a motion for summary judgment. The motion requested the trial court order Recorder to duplicate the documents at a reasonable cost,

John M. Pierce, Pittsburgh, for appellant.

Stanley B. Lederman, Pittsburgh, for appellee.

1. Act of June 21, 1957, P.L. 390, *as amended* by the Act of June 29, 2002, P.L. 663, 65 P.S. §§ 66.1–66.9(Act).

2. 65 P.S. § 66.7(b) of the Act, *added by* the Act of June 29, 2002, P.L. 663, titled *Fee limitations,* provides (with emphasis added): Duplication. *Fees for duplication* by photocopying, printing from electronic media or microfilm, copying onto electronic media, transmission by facsimile or other electronic means and other means of duplication *must be reasonable and based on prevailing fees for comparable duplication services provided by local business entities.*

which Inkpen asserted is $35 to $40 for a reel of microfilm, rather than the $325 to $357.50 charge requested by Recorder's vendor.

In denying the motion, the trial court reasoned deeds and mortgages are not within the Act's definition of public records. It determined those documents are neither an "account, voucher or contract dealing with the receipt or disbursement of funds," nor "any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person...." Trial Court Op. at 3–4, quoting 65 P.S. § 66.1(2).

The trial court accepted Recorder's analogy to records filed in the Register of Wills Office, in the Prothonotary's Office, and in the Clerk of Court's office. Those documents are accessible for viewing and copying every business day. The trial court distinguished cases cited by Inkpen, none of which addressed documents made available to the public on a daily basis. Accordingly, Inkpen's motion for summary judgment was denied. The trial court certified the case for interlocutory appeal.

■■■■ Before this Court,[3] Inkpen argues mortgages and deeds are public records under the Act so that their duplication costs are limited by the recently enacted Section 7 of the Act. He contends this result is consistent with the Act's intent to provide citizens with liberal and open access to public activities and records.

Inkpen argues recorded deeds and mortgages satisfy the explicit definition of public records in the Act. Listing statutes based on mortgages and deeds that fix rights and liabilities, Inkpen asserts the

information contained in recorded mortgages and deeds is an essential component in governmental decisions affecting the rights of private citizens. Thus, the presence of these documents in Recorder's office triggers immediate county and state tax liabilities and provides the basis for property tax assessment and invoicing.

As to his argument that the requested documents satisfy the Act's definition, Inkpen analogizes his claim to the situation in *Goppelt v. City of Phila. Revenue Dep't*, 841 A.2d 599 (Pa.Cmwlth.2004). There, Goppelt wanted access to off-site mailing addresses of delinquent real estate taxpayers. That information was required by statute to be publicly available on an ongoing basis and was crucial to Philadelphia's billing and tax collection. After balancing the privacy interests of property owners against those of the public, the Court held the mailing addresses are public records under the Act.

Also, Inkpen argues recorded deeds and mortgages satisfy a broader definition of public records implicitly contained in the Act. For this proposition he relies on *Marvel v. Dalrymple*, 38 Pa.Cmwlth. 67, 393 A.2d 494 (1978). There, in deciding some of the requested documents fit into the Act's definition of public records, this Court stated:

[W]e believe the legislature intended the generic definition of a public record contained in the Right–To–Know Act to incorporate by implication those specific definitions of "public record" contained in statutes allowing for public access to particular documents of particular agencies.

---

**3.** Our standard of review in a Right to Know Act case is whether an error of law was committed, constitutional rights were violated, or necessary findings of fact are supported by substantial evidence. *Goppelt v. City of*

*Phila. Rev. Dep't*, 841 A.2d 599 (Pa.Cmwlth. 2004). As to questions of law, the scope of review is plenary. *Durante v. Pennsylvania State Police*, 570 Pa. 449, 809 A.2d 369 (2002).

*Id.* at 498. Inkpen urges us to adopt a similar disposition by incorporating into the Act's definition of public records any document made available to the public by law.

Finally, Inkpen contends Recorder's refusal to provide him with less expensive duplicate microfilm leaves her free to charge fees in excess of the Act's duplication fee limitation. Inkpen asserts Recorder provides no assurance her agency would not make a profit from duplication and from a future web site where records can be accessed. Inkpen concludes, if Recorder's position prevails, Pennsylvania citizens may not be able to obtain access to the information for a reasonable fee pursuant to a statutory private right of action with defined appeal procedures.

Recorder's response focuses on the intent of the General Assembly to remove secrecy from certain governmental departments and agencies when it first passed and then amended the Act. Recorder distinguishes *Goppelt* by noting the off-site mailing address of a delinquent taxpayer was not information readily available to the public during business hours of the revenue department. Similarly, Recorder distinguishes *Marvel v. Dalrymple* by noting the broad interpretation of "public record" espoused in that case pertained to documents not already available to the public. Deeds and mortgages are already public.

### I.

■ A party asserting right to disclosure of documents pursuant to the Act must establish that the requested documents were generated or kept by "an agency" and that they constitute "public records." *Goppelt.* The party seeking access bears the burden of establishing that the requested material bears the characteristics of a public record. *Id.* The party seeking to inspect government records must establish some close connection between one of the statutory categories and the material sought. *LaValle v. Office of General Counsel,* 564 Pa. 482, 769 A.2d 449 (2001).

We agree with the trial court that a filed deed or mortgage is not a "public record" within the meaning of the Act. As defined in Section 1 the Act, 65 P.S. § 66.1,[4] a public record is:

> Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons....

As to the first part of the definition, which describes an account/voucher/contract, neither a deed nor a mortgage is an account, voucher or contract to which the Recorder is a party. Rather, the documents memorialize third-party transactions which are made available to the public in order to notify the world of interests in real property.

Regarding the second part of the definition, which describes a minute/order/decision, filed deeds and mortgages fix property rights and trigger tax liabilities. However, the documents arise from transactions outside the Recorder's office, and they memorialize actions taken by third-parties. Thus, neither a deed nor a mortgage is a minute, order or decision by the Recorder.

A filed deed or mortgage is a public record in a fundamental sense, because it

---

4. The 2002 amendments did not change the definition of "public record" in Section 1.

is a record of a transaction made accessible to the public by august law. However, neither a deed nor a mortgage is a "public record" under the more limited definition in the Act.

*Marvel v. Dalrymple,* does not compel a different conclusion. In that case this Court considered civil service examination records, which were required by law to be kept open to public inspection. The Court decided the Act required the documents be produced. The issue here is different, because there is no question the requested documents are accessible by the public. Here, the issue concerns fees for duplication under a statutory provision not in existence when *Marvel v. Dalrymple* was decided.

Also, we distinguish our recent decision in *Goppelt,* where we considered the off-site billing addresses of tax delinquent property owners. Disclosure of that information was resisted. We held an off-site address is an essential component of the tax account and therefore falls within the Act's definition of public record. We did not consider bulk duplication fees for documents in the tax accounts. Here, access to the documents is not at issue, and we address duplication costs.

We also note a case not addressed by the parties or the trial court, *Hessley v. Campbell,* 751 A.2d 1211 (Pa.Cmwlth. 2000). In that case, we confronted duplication costs for a county's "street list" of registered electors. By statute, the lists were held open to public inspection, and political entities were entitled to the list information at no ` charge. This Court concluded a $300 charge to copy the information onto computer diskettes was improper. However, in *Hessley* we did not

discuss the definition of "public record" under the Act. Also, the duplication cost limitation of the Act was not discussed, because it was not in existence. Accordingly, *Hessley* does not control here.

Based on this analysis, we discern no error in the trial court's conclusion that the Act does not apply to deeds and mortgages filed and accessible to the public in the Recorder's office.

## II.

 We reach the same conclusion by considering pre-existing laws addressing fees for recorders of deeds. We begin this analysis with the Constitution of the Commonwealth of Pennsylvania. Article 9, § 4 of the Pennsylvania Constitution, titled, "County government," includes recorders of deeds as county officers. Paragraph three of that section provides:

County officers shall be paid only by salary as provided by law for services performed for the county or any other governmental unit. *Fees incidental to the conduct of any county office shall be payable directly to the county or the Commonwealth, or as otherwise provided by law.*

Pa. Const., Art. 9, § 4, ¶ 3 (emphasis added). Under this provision, a recorder of deeds may not retain any fees received. *Norris v. York County,* 113 Pa.Cmwlth. 541, 538 A.2d 85 (1988) (pursuant to constitutional prohibition, recorder of deeds is not entitled to personally retain any stamp sale commissions).

Other laws address fees which county officers may charge. The Second Class County Code[5] enacted in 1955 governs Allegheny County.[6] Section 406 of the

---

5. Act of July 28, 1953, P.L. 723, *as amended,* 16 P.S. §§ 3101–6302.

6. Section 210 of the County Code, Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. § 210(2), established a second class county as one having a population of 800,000 or more

Second Class County Code, titled "Records open to inspection" provides in part:

> (a) The minute book and other fiscal records and documents of the county may be open to the inspection of any taxpayer thereof, *but the proper officers may make reasonable rules and regulations respecting the times of such inspection and fees for copying.*

16 P.S. § 3406(a)(emphasis added).

Another statute enacted in 1919 addresses fees which Recorder here may charge. That statute is titled "An Act to regulate and establish the fees to be charged and collected by the recorder of deeds, in counties of the second class." Act of June 12, 1919, P.L. 476, *as amended,* 16 P.S. §§ 11411–11412 (Second Class County Fee Act). The Second Class County Fee Act includes a thirty-eight paragraph fee schedule which explicitly establishes minimum charges for Recorder's services.[7] There is no minimum charge listed in the schedule for duplication. However, the final paragraph of the Act declares, "The fee for services not herein specifically provided for shall be the same as for similar services." 16 P.S. § 11411, ¶ 37.

Recorders of deeds in first class counties are governed by another similar statute enacted in 1949.[8] Section 1 of that act, 16 P.S. § 7629, has nineteen paragraphs.

The final paragraph provides, "The fees for services not herein specifically provided for shall be the same as for similar services, as nearly as can be practically ascertained."

A fee for copies by the recorders of deeds in other counties is specifically provided in Section 1 of the Act of April 8, 1982, P.L. 310, 42 P.S. § 21051. That fee schedule provides copies should be fifty cents per page. The last sentence of that fee schedule states, "Where no fee is specified the fee shall be set by the recorder of deeds."

■ From the above discussion, several conclusions are apparent. First, the Recorder here may not retain for her personal use any fees collected from duplicating deeds and mortgages. All fees must be turned over to the county's controller.

Second, several statutes of long standing address fees to be charged by recorders of deeds. Recorder here must collect a fee for copying records that is "the same for similar services" which she renders. Within that limitation, Recorder has the discretion to set a reasonable fee for copying. *See* 16 P.S. § 3406(a).

In ascertaining legislative intent, we may consider, among other matters, other statutes upon the same or similar subjects. 1 Pa.C.S. § 1921(5). Clearly, the acts dis-

---

but less than 1,500,000 inhabitants. First Class Counties have a population of 1,500,000 and over. 16 P.S. § 210(1). Second Class A Counties have a population of 500,000 or more but less than 800,000 inhabitants. 16 P.S. § 210(2.1). The 2000 United States census data recorded Allegheny County's population at 1,281,666.

7. For example, the Second Class County Fee Act provides the minimum fee for recording a deed of not more than four legal pages shall be $10.00; and for each additional page or fraction thereof, $2.00 extra. 16 P.S. § 11411, ¶ 2. Paragraph twenty of the Second

Class County Fee Act regulates fees for recording mortgages. The minimum fee for four legal pages is $17.00, with each additional page $2.00 For mortgage searches on not more than one piece of property, for each name the minimum fee is $10.00; and for each unsatisfied mortgage shown, $5.00. 16 P.S. § 11411, ¶ 26.

8. The Act of April 20, 1949, P.L. 644, *as amended,* 16 P.S. §§ 7629–7631, is titled "An Act to regulate and establish the fees to be charged and collected by the recorder of deeds in counties of the first class."

cussed above relate to fees to be charged by county officers in general and recorders of deeds in particular. These acts are statutes on the same or similar subject as the fee limitation for duplicating public records under the Act; accordingly, they may be considered.

■ Statutes are never presumed to make any innovation in the rules or principles of the common law or prior existing law beyond what is expressly declared in their provisions. *In re Holton's Estate,* 399 Pa. 241, 159 A.2d 883 (1960). Therefore, we cannot presume that the addition of the 2002 fee limitation for duplicating public records under the Act was meant to implicitly change any of the pre-existing law governing fees to be charged by recorders of deeds. Following this reasoning further, any challenge to fees charged by a recorder of deeds must be based on pre-existing law rather than on the newly enacted fee limitation of the Act, which does not specifically address such fees.

For the reasons stated, we affirm the conclusions of the trial court that the Act does not provide a remedy for the fees for duplicating recorded deeds and mortgages.

### ORDER

AND NOW, this 1st day of December, 2004, the decision of the Court of Common Pleas of Allegheny County in the above-captioned matter is **AFFIRMED.**